Mr. Henry was convicted of possession with intent to distribute based on 3 grams of crack cocaine, a quantity that could be consistent with straight possession. There were no controlled information that he was conducting such activity. The evidence that was admitted suggesting a possible intent to distribute was wrongly admitted. First, you have the text messages, which were discovered as a result of a cell phone search that was based on a bare-bones affidavit that provided no case-specific reason to believe that any evidence would be found on Mr. Henry's cell phone. Then, you have Mr. Henry's prior conviction for possession with intent to distribute. That prior conviction had no relevance apart from predisposition and was far more prejudicial than probative. Finally, a police expert was permitted to go far beyond providing the jury with building block general information about the drug trade. Even though he was not personally involved in the investigation, he summarized the entire investigation, reviewed all of the evidence, including the text messages and that prior In my opinion, these drugs were packaged for sale. He also interpreted text messages that were not coded or otherwise beyond the juror's ken. Even with all of this erroneously admitted information, the evidence at trial did not compel a finding that Mr. Henry had the intent to distribute. Yet, because no lesser-included instruction was given, the jury was deprived of the opportunity to return a straight possession conviction. Can I ask you about the lesser-included instruction issue? Why isn't that plain error review because the objection wasn't properly preserved? Initially, your Honor, I would suggest that we believe that we prevail even under plain error review. However, we do not think that plain error review applies here in the unique circumstances of this case. And the timing of this is important. On sort of the end of evidence, they hold a charge conference. At that point, the judge says she's inclined to not give the lesser-included, but has not yet decided. The next morning, immediately before the instructions, the judge comes in and she begins with her ruling. And her ruling is, I am not going to give a lesser-included instruction. And she says specifically to counsel, quote, this is preserved for the record. In those circumstances, where counsel has specifically been sort of, everything started off with the ruling, the judge comes in and basically says, this is what I'm doing. Hasn't this court, though, suggested that we need to have a kind of clear, black-letter rule on this? As recently as July, the court issued an opinion emphasizing the word after. And there are benefits to a black-letter rule in this area, so there's no ambiguity. So it's quite clear to counsel what they need to do. You're going to inject a lot of nuance and case-by-case analysis into it, but I don't see any support in the First Circuit's cases for that kind of approach. I think that the support comes from cases like Fernandez-Garay and Toribio-Lugo, where the court has recognized that sometimes counsel does not have an obligation to continue to object in the face of a clear statement by the judge that they have decided that issue. That's not in a jury instruction context, though, is it? I do think that it is. It can be extended to this context. I also think it's particularly important in this case that one of the purposes of the Rule 30, clarity and finality, is to ensure that the trial judge has the opportunity to correct possible error before deliberation begins. But it seems a little odd when a simple preservation can take place when defense counsel simply says, I renew my objections for the reasons previously stated, and that would be a perfectly adequate preservation remark. I think in these circumstances where the court was so specific and specifically said to counsel, this is my ruling, your objection is preserved for the record, and makes that direct statement immediately before giving the instructions. Did you say preserved or noted for the record? I'm sorry. Let me look at my – I have preserved for the record. But isn't the problem – as I count them up, we have something like 18 cases in which we said Rule 30D requires that you repeat it. And I'm sympathetic to when counsel kind of doesn't even get a chance to do that because the judge thinks it's all done. But in this case, the trial judge actually, after giving the instructions, called counsel to sidebar to specifically ask whether there were any instructions. So it was scrupulously following the procedure. And at that point, counsel affirmatively said none. So unless we're going to overrule a lot of precedent, aren't you kind of stuck on that? I don't think it has to be overruled because of that comment that the judge – I think that that comment immediately before giving the instructions is unique. And in the circumstances of this case where it was right before the instructions, everyone knew what the judge was doing, why it was happening, knew that in this particular case, the facts are different, and it does not require a plain error application. The theory of plain error is that even though counsel said none, the judge should have given the instruction anyhow. Isn't that an odd way to go with a lesser-included defense instruction? Because lots of times a criminal defendant is not going to want that given because it gives the jury a middle ground and the defendant may be saying, I want an all or nothing because it will increase my chances of nothing. So it would be a very odd decision to set aside on plain error review when the absence of an objection could actually be the assertion of a right. I think that the difference in this case is that counsel – whether it was properly preserved or not, putting that aside for the moment, counsel did clearly request a lesser-included instruction. But things happened since then that could change counsel's mind, like closings. Not between the time of – so when the court – so between the time that the defendant requested the instruction and the time that the court gave the instructions, nothing else happened. Those all happened back-to-back. It's charge conference, judge's statement that your objection is preserved for the record, instructions, and then the lack of post-instruction. The judge gave all the instructions before closing? That – I cannot remember if closings had already been given and then they had a charge conference. I'd have to look back at the transcript. But the order is that at the close of the previous day, they're talking about instructions and then the court begins with, I will check during my brother's argument. But I don't think there was any intervening. I also think that the concern about the defendant didn't want this, I think is not present here. And I also think that the courts have talked about how even where that is a concern, that this can be a double-edged sword, that lesser-included instructions can go both ways, that even despite that, a lesser-included instruction is very important because it preserves the jury's fact-finding role. On the double-edged sword, isn't this a kind of double-edged sword for both you and the government because it blows back on the admission of the prior conviction? Because the admission of the prior conviction was on intent. And as I understand your argument there, intent really wasn't that issue because he wasn't claiming that he possessed, which was the lesser-included offense. I agree. I think that a lesser-included instruction is always a double-edged sword for both sides because there is this. But here's a double-edged sword with another issue in the case. For this other issue, you've got to argue, we weren't even arguing for a lesser-included offense. I think that it's important when considering the lesser-included offense instruction claim and the prior conviction claim to consider the different sort of part of trial at which they were made. When you look at cases like, I believe it's in Veridacus. Yeah, the court, it is in Veridacus. The court talks about, you consider the prior conviction admission at the time that the court made that ruling. So that's sort of a during trial ruling. And it's clear that under 403, it is relevant what the defendant's theory of defense is. But it's also clear under the lesser-included instruction cases, which come at the end of trial when everything has come in. And here, the prior conviction did come in. You know, that he, Mr. Henry, lost that fight at trial. And where that has come in, the lesser-included instruction consideration requires looking at all of the evidence that came in. And when you look at all of the evidence that came in, it's clear that intent was contested by both sides, that there was no, you know, the cases talk about an actual concession. Well, there was no concession here. The argument wasn't Mr. Henry didn't possess, but if he possessed, he intended. It's Mr. Henry didn't possess, and you don't even need to get to intent because he didn't possess. In the absence of a stipulation, of a willingness to stipulate in a flat-out admission, then how do you get around the prosecution's argument that they have a right to prove up each of the elements of their case? And absent a stipulation, then distribution is an element of the case that they need, and it was relevant to the intent issue on distribution. My answer would be twofold. The first is that I think that a stipulation is not required. If you look at cases like Varadakis and like Gilbert, the court held that it did not matter that the defense hadn't stipulated. The theory of defense was still relevant. And then as far as, you know, sort of the government's need for this evidence, they really needed this evidence to show intent, that's where the double-edged sword with the lesser-included instruction comes in. The more the evidence is equivocal as to intent, the more important it was for the judge to give a lesser-included defense instruction. It would be relevant but not dispositive, unlike a stipulation where under old chief you could remove the issue from the case potentially through a stipulation. There was no stipulation here, so it's one factor among many in the 403 analysis. That's right. It's one factor in the 403 analysis. But I don't think that it can be ignored or discounted entirely. So what is your best-planned-error argument? I think that the best-planned-error argument, I would really look at NUR, which I know that Judge Coyotta wrote and Judge Thompson, you were on the panel. There's very strong statements in NUR about how lesser-included instructions are about preserving the jury's role, preserving rational conclusions based on this record. If Mr. Henry had been convicted of straight possession, that statute carries a maximum for him of two years' incarceration. Substantially lower not only than the statutory max for which he was convicted, but also the sentence that he was given. I think that it was a very plausible reading of this record. Is it relevant at all that in the opening statement, defense counsel said this could possibly be a distribution quantity level? I don't think that that can be read in any way as any sort of concession. I don't think it's a concession, but I'm asking is it relevant at all to the analysis? I don't think so, because he's not talking about Mr. Henry's intent. That's what would have mattered, not whether this quantity could in some theoretical way. And if you look at that opening, counsel goes on to argue about Mr. Henry's intent. He goes on to talk about the prior conviction and how that doesn't show if he did that being possessed. But using your 403 argument, relevant but not dispositive, could you concede that whether it's raised as a defense may be relevant, whether counsel makes a statement in opening essentially suggesting that that isn't going to be an issue in the case is a relevant consideration in determining whether a rationed jury could return a verdict from the lesser included? May I? Please. I think that in this case, isolating that one statement, I first of all don't think that it bears the weight of some sort of admission of intent or taking intent out of the case, especially when you look at- I agree with that. I'm just trying to figure out whether it could be relevant at all. I think when you look at the traffic, the rest of the case, where counsel does ask questions of the expert pushing on intent and where his closing is different once all the evidence has come in, once everything has unfolded at trial, I don't think that that statement would factor into whether or not he gets a lesser included instruction because lesser included instruction analysis is about the evidence, not about something that counsel may have said in opening, which is not evidence. Thank you. Thank you. Good morning. May it please the Court, Vijay Shankar for the United States. Your Honors, with respect to the lesser included offense instruction, this Court's cases make abundantly clear that plain error review applies here. The Court's cases and Rule 30 require that a defendant restate an objection to the jury instructions after the instructions have been provided. Here, as the Court noted, Mr. Heming was given an opportunity to restate that objection, and he chose not to. He specifically stated he has no more objections. And there's a reason for this rule, as some of the Court's questions alluded to. After the jury has heard arguments and the Court has had an opportunity to hear arguments, and after the Court has read the instructions to the jury and heard how they sounded and had an opportunity to rethink what the evidence showed, that is where the Court might have an opportunity to rethink its former denial of the instruction. And the Court was not given that opportunity here. In this case, did the closings come before the instruction? They were done in two parts. There was a first part of the instructions, which were sort of the preliminary standard instructions, and then the parties made their closing arguments, and then the Court gave its remaining more, I guess, substantive instructions. And then at that point, it called counsel to a sidebar and asked if there were objections, at which point Mr. Henry said none. So did the Court make the ruling against the lesser included at the beginning of that sequence, before the preliminary closing instructions were given? Yes, before all of the instructions were given. Is there any inference that defense counsel may have been misled by the way that the trial judge phrased the preservation of the objection? Well, Your Honor, and I think Judge Kayotte asked this question. The Court used the word noted, just to clarify that point, rather than preserved. I'm not sure it really makes all that much difference. The point is that through this Court's cases and Rule 30, counsel for both sides, the government and the defense, are on notice that no matter what the Court says, and this Court said that in the O'Connor case and the Meadows case, even if the Court says, counsel, your objections have been preserved, counsel knows that they have a requirement to restate their objections. Is there any limit to that? I mean, suppose the judge says, counsel, I've heard your objections. I recognize we have this rule. I'm telling you that I don't want you to object. Are there any limits to this principle that they have to be restated after closing argument where a judge may effectively instruct someone that they are not to present their objection? Your Honor, I haven't seen cases dealing with that. I think that perhaps where a court has specifically admonished counsel not to pose any further objections and has had a difficult exchange with counsel, maybe this Court could find an exception. How would you distinguish this case from the extreme example? Well, this case is exactly like O'Connor where this Court said that even if the Court says, I have noted all objections, that counsel still has a requirement, still has the need to restate the objection at the close of instructions. Under plain error review, the error here does not satisfy that standard. As this Court said in Henson, the failure to give a lesser included offense instruction cannot satisfy plain error review where the evidence was sufficient to support guilt on the greater charge. That evidence included the prosecution's insistence, the evidence of the prior conviction. That's right, Your Honor. That was justified on the grounds that it was relevant to intent? Knowledge and intent, Your Honor. I'm having a little difficulty following the line of logic on how it was relevant to knowledge or intent unless by knowledge and intent you mean essentially propensity. Well, Your Honor, this Court's cases have made it absolutely clear that in this exact situation, and I point the Court to Doe, Manning, and Mickens, which are all cited in our brief, Doe is virtually on all fours with this case. In a possession with intent to distribute case, evidence of a prior conviction is relevant to show knowledge and intent, which both are included under 404B. I hear you say that, and I'm familiar with Doe, and I know what it holds, but explain to me how it is relevant to intent unless what he's really saying is that because he did it on one occasion, we're going to infer he is doing it on this other occasion. Well, it's not that so much, Your Honor. As a defendant who previously possessed, I'll use this case as an example. The prior conviction involved 14 separately packaged rocks of crack cocaine. Here the evidence showed that he possessed 21 separately packaged rocks of crack cocaine. The fact that he knew and had the intent in the previous case that that sort of packaging and distribution and packaging and quantity were connected to his distribution shows that he would likely have that same knowledge and intent in this case. But how is it inconsistent with personal use? I mean, if someone who buys that much cocaine for personal use, it's going to be packaged the same way. Well, Your Honor, as the expert in our case testified and as the jury heard, it is very unlikely that users carry around 21 individually wrapped rocks of crack cocaine for personal use. Unless they just bought it. Well, he also testified that it's very unlikely that they purchase it in that manner. He used the pizza example. If you're buying a pizza to eat at that time or to take home for five people, let's say, or to save for later, you buy an entire pizza, not separately packaged slices of pizza to take home. On the other hand, if you're buying pizza to walk out and resell on the street, you're going to buy them in separately packaged individual slices. Unless you're buying it from a street-level dealer. They often have multiple rocks separately packaged. They keep it in the side of their mouth, and they'll come out and sell you whatever number of packages you want to buy. I understand the point. People buy in volume, just like you try to go to the grocery store, and you don't pick up ten small packets. You pick up one big one. But that's not always the case. There are a number of sales I think you would acknowledge in routine practice where street-level dealers get their crack already prepackaged, and they sell it that way. It's certainly possible, Your Honor, and Mr. Henry had the opportunity to make that argument to the jury. Aren't the text messages a significant difference here? They tend to show that the defendant was in fact selling crack cocaine, and that distinguishes it from the personal use that you might draw simply from the quantity involved. Absolutely, Your Honor. Some of the text messages in particular are very clearly indicative of distribution here. For example, the reference to work, 7 to a 14 large of hard. Someone asking if they could exchange a dub for 12 cash and a $10 gift card. These are all clearly indicative of distribution. The jury heard all of this, as well as the expert testimony, as well as the cash that was found on Mr. Henry in small denominations. And so the evidence here was clearly sufficient, if not overwhelming, indicative of an intent to distribute. When I was thinking through this expert witness testimony, and I'm certainly aware that our case law has said that you may present these kinds of expert witnesses with the proper foundation, I couldn't figure out from a defense perspective, though, how would you counter it? Usually in cases it's the battle of the experts, and I couldn't figure out, well, what kind of witness would a defendant put on this case? I mean, I guess it made me think about the trouble I'm having with our courts having accepted this kind of witness. Well, Your Honor, certainly I can't revisit the cases where this court has repeatedly upheld this very type of testimony under Rule 702 as expert testimony, as opposed to lay opinion testimony. But, I mean, this kind of testimony essentially says we presume that this street language is indiscernible to the average person. We bring in someone who says, okay, I've had experience with drug dealings, and this is what it means. I just don't know how you would ever counter that. Well, I have two responses to that, Your Honor. First, the court's instructions make clear to the jury that they are not to give any special weight or extra weight to expert testimony. And we do presume that juries follow their instructions. Secondly, the defense does have the opportunity to cross-examine the expert, which they did here, and to argue to the jury that these interpretations just do not hold water. And they did that here. It's also possible, and I'm not aware of what pool of such experts there are out there. I haven't looked into it. But I don't see why a jury couldn't call an expert who has some experience in street dealings, maybe a former law enforcement officer, maybe a former drug dealer, who could testify as an expert if qualified that these words don't mean what the government is having them do. One of the problems with this kind of testimony is that officers are often called to testify as an expert that people use coded language. And then the prosecutor wants the expert to decipher the coded language, but they aren't able to decipher it by saying this particular code is used commonly on the street. They just say, that's code for cocaine, and how do you know that? Because drug dealers always use cocaine, use code words for cocaine. That doesn't seem to require the kind of expertise. Isn't that one way to maybe cabin a law enforcement expert witness's testimony by requiring that the testimony be limited to that which is really a matter of expertise? That I know a particular term, because of my involvement in other cases, has a particular meaning, rather than simply, I know people use code, this is, in my opinion, code, and this means crack. I think that's fair, Your Honor, but I do think what you held up as the right way to do it was done here. Officer Casales testified about his extensive experience and training in this area. So when a dub, he testified that there were specific prior cases he had been involved with where the term dub was used as a code word for drugs? I'm not sure he went, he said that specifically. But he didn't say, well, that must mean cocaine, because that's how I see it here. He said that that's what that means. And I think based on the fact that he had been qualified as an expert in front of the jury, based on his training experience and involvement in hundreds of these cases, the jury could only infer that he was saying that, based on his experience, that's what a dub means. And again, the jury was free to reject his testimony. If the court has no further questions, the government will rest on its brief. It just strikes me as odd, using the words hard and flave, that unless you as a juror would have some kind of familiarity with that parlance, how you would be able to reject that as an unreasonable meaning, given the significance of that as expert testimony? I guess I'm just having difficulty understanding this. Well, again, Your Honor, the fact that the jury would tend to not be familiar with that parlance is exactly why the courts have allowed this type of testimony. But when you combine that with the instruction that was given here, that expert testimony is not to be given any special weight or extra weight, and the presumption that juries follow their instructions, plus the opportunity of the defendant to cross-examine the expert and to argue in closing that this language could not have meant what the expert said it meant, we trust that juries can reach the right conclusion in those situations. If you had a text message that was in Portuguese, you'd bring in an expert, put him on the stand, establish that he speaks Portuguese and English, and then say he'd translate the text message. You're basically saying that's what happened here. It wasn't Portuguese, but it was a street language. And as long as he was qualified and established that he knew that, and survived a Dalbert challenge, he could do the translation. That's right, Your Honor. If the defendant challenged that, they could bring in someone who said, I'm familiar with this language, and it doesn't mean that. It's lyrics from young MC. They could. They could, and they did do that here, essentially, and cross-examine the expert even if they choose not to bring in their own. I guess what triggered this in my mind is a crazy show that I used to nonetheless watch was Flavor Flav. And it had nothing whatsoever to do with drug dealing. Lots of other silliness. But this expert is saying that this particular usage of the word Flav is related to drug dealing. Well, Your Honor, here, and I realize this isn't exactly your point, but if you get into the weeds here, if you read the word Flav and the specific context in which it was used, an individual asked for Bud in order to send him some plays, and Henry responded Flav. So I do think an inference can be drawn there, a rational one at least, that Bud is a commonly used term for marijuana, and instead Henry responds no Flav, that it's probably another drug. Again, I'm not the expert, so I'm not saying that, but that's what our expert has essentially testified to here, and that's what the jury heard. Thank you. Thank you. I will just say at the outset, Governor Counsel was right. The court's closing instructions were split up by the closings, but I don't think that anything came up during closing arguments that would imply that counsel decided to abandon the lesser included instruction request. I think that the fact that he requested it is still there on the record, and there's no reason to. Well, the closing is one of the key events in the whole trial, where you hear how the other side is finally staking out its position, hear how the arguments interplay, you watch the jury, you do some body language reading, you make a lot of judgments based on closing, and then after that, when he's asked are the instructions okay, he says yes, they are. So that's the problem I think you have. I think where both closings clearly contested intent and where the court had made that specific direction, I still think that, and where the evidence supported it so strongly, there was reason to give that instruction. Turning to the... Let me just say, in as much trouble as I might have with the expert, and also I personally have trouble with whether there was a sufficient basis for a warrant into the cell phone, there was no good faith argument. Rebuttal to that in the opening brief, and that sort of sinks you on that one. With respect to the motion to suppress, I would ask this court not to hold my error against Mr. Henry. I erroneously applied the district court rule that the government has to plead and argue the good faith exception into the appellate context. It was my mistake, and I do think that there is reason. This court can excuse waiver, and I do think in this case there is reason to do so. I think the government was able to make its argument. They could have intuited from the fact that we argued that suppression was required, that we were against the good faith exception applying, and I do think that where this application was so devoid of probable cause, was so devoid of any reason to believe that anything would be found on Mr. Henry's phone. I have a concern about that because we have to be careful about general warrants, and clearly because you arrest somebody with drugs on their person does not mean you have a probable cause to search their computers at home and cell phones they don't have with them. But you're asking us to ignore reality? Isn't this the way in which drug transactions take place is with text messages on phones, and when you find the phone on the person with the drugs and the cash, there is reason to believe that that phone would be used in facilitating either the purchase or the sale of the drugs and the cash that you find in the person. To say that it's so devoid of probable cause is to, in a way, in my mind at least, deny the reality of my experience. I think my answer to that is twofold. First, I think at this point in America all business, legitimate or not, is conducted via cell phone. So it makes it likely to think you're going to find, I mean it's hard to imagine a drug offense these days in which the cell phone the person is carrying that they're arrested is not likely to have evidence. I think in this case the only, and the government argues this, they argue basically he's got drugs, he's got cash, he's got a cell phone, we get a warrant. I think that would completely undermine the Supreme Court and this Court's holding in Riley and Worry. In Riley the Supreme Court talked about rejecting an argument, rejecting sort of a reason to believe standard. That searches into arrest you're talking about? I mean here there's an application for a warrant and a probable cause determination which is obviously very, very different from a rule that says you can search a cell phone incident to arrest without any basis to believe it will produce evidence of a crime. I think in practice in this case where there really is nothing other than we found this phone when we arrested him, we also found drugs, we also found money, that it would have the same result as allowing the police to search a phone seized incident to arrest. There's no, they don't see him do anything with the phone, they don't observe any drug activity, they don't have any information if there's any drug activity. I think there's a way though to draw this narrowly and associate it with drug crimes in particular because somebody had a cell phone and they're arrested for a bank robbery. It doesn't necessarily imply that they've used the cell phone in facilitating the bank robbery, but it's just the reality of day-to-day experience with drug trafficking. Virtually every single case, every transaction is facilitated through the use of a cell phone in ways that isn't the case with respect to many other kinds of crimes. So I think there would be a way to say this case is different. We don't have to reach conclusions as a general rule that a cell phone on the person at the time of arrest will always result in probable cause. Isn't it enough to say where we have evidence of drug transactions and the cell phone is on the person at the time of arrest, there is a reasonable basis to believe that we will find text messages, as was found here, as is found in virtually every case where the cell phone is searched, showing that the transaction was facilitated with text messages. In addition to Riley and Rory, I would also turn this Court's attention to the Supreme Judicial Court's recent opinion in White, which I will submit in a 28-J letter. Delving into these issues of whether simply because an officer says, in this type of crime, in these type of circumstances, we often find evidence on a phone. The SJC said that's not enough. It's not enough just to say in this type of crime. The cell phone in that case wasn't found on his person. It wasn't in connection with a drug crime. I understand that, but it was an affiance saying, in this type of crime, that being a co-venture or a robbery murder, we expect the co-venturers to communicate, and they did. Actually, when we searched the phone, we found evidence that the co-venturers had communicated using cell phones. But that can't drive the result. It's like a house. There needs to be specific reason to find on this phone evidence of drug distribution. They have possession quantity in Mr. Henry's pocket, and they have some cash. They don't have any other reason at all to believe that there is anything on his phone or to believe that he's involved in drug distribution as opposed to simple possession. And I do think this is a very bare-bones affidavit that would have a huge impact on lots of cases if officers are allowed to get a search warrant in these circumstances for a phone. Thank you.